UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| MARK THORPE, individually and on behalf of all others similarly situated,<br><br>v.<br><br>DHL EXPRESS (USA), INC. d/b/a DHL EXPRESS and EXEL INC. d/b/a DHL SUPPLY CHAIN (USA) | Case No. 2:22-cv-02035<br>FLSA Collective Action<br><br><br>Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, DHL's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout DHL's organization.

3. As a result, DHL's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Mark Thorpe is one such DHL worker.

5. DHL could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, DHL used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. DHL pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. DHL made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. DHL's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Thorpe brings this lawsuit to recover these unpaid overtime wages and other damages owed by DHL to him and DHL's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but DHL's decision to make its own non-exempt employees workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by DHL to all these workers, along with the penalties, interest, and other remedies provided by federal law.

### JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because DHL is headquartered in this District.

### PARTIES

14. **Plaintiff Mark Thorpe** is a natural person.

15. Thorpe was, at all relevant times, an employee of DHL.

16. Thorpe represents at least two groups of similarly situated DHL workers.

17. Thorpe represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of DHL (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

18. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

19. **Defendant DHL Express (USA), Inc. d/b/a DHL Express ("DHL Express")** is a foreign corporation.

20. DHL Express is headquartered in this District.

21. DHL Express may be served by service upon it at **360 Westar Blvd., Westerville, OH 43082**, or by any other method allowed by law.

22. **Defendant Excel, Inc. d/b/a DHL Supply Chain (USA) ("DHLSupply Chain")** is a foreign corporation.

23. DHL Supply Chain is headquartered in this District.

24. DHL Supply Chain may be served by service upon it at **360 Westar Blvd., Westerville, OH 43082**, or by any other method allowed by law.

25. At all relevant times, DHL Express has been doing business under the assumed name, "DHL Supply Chain."

26. At all relevant times, DHL Express has been doing business under the assumed name, "DHL Solutions."

27. At all relevant times, DHL Express has been doing business under the assumed name, "DHL Worldwide Express."

28. At all relevant times, DHL Express has been doing business under the assumed name, "DHL Global Forwarding."

29. At all relevant times, DHL Express has been doing business under the assumed name, "DHL Freight."

30. At all relevant times, DHL Express has been doing business under the assumed name, "DHL eCommerce Solutions."

31. At all relevant times, DHL Express exerted operational control over its subsidiaries and alter egos.

32. At all relevant times, DHL Express substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

33. At all relevant times, DHL Express had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

34. DHL Express employed and/or jointly employed, with its subsidiaries and alter egos, Thorpe and the Similarly Situated Workers.

35. DHL Express and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

36. At all relevant times, DHL Supply Chain has been doing business under the assumed name, "DHL Express."

37. At all relevant times, DHL Supply Chain has been doing business under the assumed name, "DHL Solutions."

38. At all relevant times, DHL Supply Chain has been doing business under the assumed name, "DHL Worldwide Express."

39. At all relevant times, DHL Supply Chain has been doing business under the assumed name, "DHL Global Forwarding."

40. At all relevant times, DHL Supply Chain has been doing business under the assumed name, "DHL Freight."

41. At all relevant times, DHL Supply Chain has been doing business under the assumed name, "DHL eCommerce Solutions."

42. At all relevant times, DHL Supply Chain exerted operational control over its subsidiaries and alter egos.

43. At all relevant times, DHL Supply Chain substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

44. At all relevant times, DHL Supply Chain had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

45. DHL Supply Chain employed and/or jointly employed, with its subsidiaries and alter egos, Thorpe and the Similarly Situated Workers.

46. DHL Supply Chain and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

47. DHL Express and DHL Supply Chain are joint employers for purposes of the FLSA.

48. Throughout this Complaint, DHL Express, DHL Supply Chain, and their subsidiaries and alter egos are referred to jointly as "DHL."

### COVERAGE UNDER THE FLSA

49. At all relevant times, DHL was an employer of Thorpe within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

50. At all relevant times, DHL was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

51. DHL was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

52. During at least the last three years, DHL has had gross annual sales in excess of $500,000.

53. DHL was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

54. DHL employs many workers, including Thorpe, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

55. The goods and materials handled, sold, or otherwise worked on by Thorpe, and other DHL employees and that have been moved in interstate commerce include, but are not limited to, parcels and vehicles.

**FACTS**

56. DHL is a logistics company. DHL USA, About Us, https://www.dhl.com/us-en/home/about-us.html (last visited Apr. 22, 2022).

57. DHL employs over 400,000 workers. DHL USA, About Us, https://www.dhl.com/us-en/home/about-us.html (last visited Apr. 22, 2022).

58. Many of DHL's employees are non-exempt hourly and salaried workers.

59. Since at least 2021, DHL has used timekeeping software and hardware operated and maintained by Kronos.

60. On or about December 11, 2021, Kronos was hacked with ransomware.

61. The Kronos hack interfered with the ability of its customers, including DHL, to use Kronos's software and hardware to track hours and pay employees.

62. Since the onset of the Kronos hack, DHL has failed to keep accurate track of the hours that Thorpe and Similarly Situated Workers have worked.

63. Instead, DHL has used various methods to estimate the number of hours Thorpe and Similarly Situated Workers work in each pay period.

64. For example, DHL issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

65. As a result of DHL's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

66. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

67. Thorpe is one of the thousands of employees affected by these pay and timekeeping practices.

68. Instead of paying Thorpe for the hours he actually worked (including overtime hours), DHL simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Thorpe's actual hours worked and regular pay rates, in multiple workweeks.

69. In some instances, Thorpe was paid portions of the overtime he worked, but the overtime rate he was paid was not at least 1.5 times his agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

70. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

71. DHL knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

72. DHL knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

73. DHL could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

74. Instead of accurately tracking hours and paying employees their overtime, DHL decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

75. Even to the extent it did pay some overtime to affected employees, DHL failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium DHL did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

76. It was feasible for DHL to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

77. But it chose not to do that.

78. In other words, DHL pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to

those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

79. Thorpe is just one of the many DHL employees who had to shoulder the burden of this decision by DHL.

80. Thorpe was a non-exempt hourly employee of DHL.

81. Thorpe regularly worked over 40 hours per week for DHL.

82. Thorpe's normal, pre-Kronos hack hours are reflected in DHL's records.

83. Since the Kronos hack, DHL has not paid Thorpe for his actual hours worked each week.

84. Since the hack took place, DHL has not been accurately recording the hours worked by Thorpe and its other workers.

85. Even when DHL has issued payment to Thorpe for any overtime, the overtime is not calculated based on Thorpe's regular rates, as required by federal law.

86. DHL was aware of the overtime requirements of the FLSA.

87. DHL nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Thorpe.

88. DHL's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

89. The full overtime wages owed to Thorpe and the Similarly Situated Workers became "unpaid" when the work for DHL was done—that is, on Thorpe and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985),

*modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

90. At the time DHL failed to pay Thorpe and the Similarly Situated Workers in full for their overtime hours by their regular paydays, DHL became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

91. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

92. Even if DHL made any untimely payment of unpaid wages due and owing to Thorpe or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

93. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

94. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to DHL's acts and omissions resulting in the unpaid wages in the first place.

95. Thorpe and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by DHL under federal law.

## COLLECTIVE ACTION ALLEGATIONS

96. Thorpe incorporates all other allegations.

97. Numerous individuals were victimized by DHL's patterns, practices, and policies, which are in willful violation of the FLSA.

98. Based on his experiences and tenure with DHL, Thorpe is aware that DHL's illegal practices were imposed on the FLSA Collective.

99. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

100. These employees are victims of DHL's respective unlawful compensation practices and are similarly situated to Thorpe in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

101. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

102. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

103. DHL's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

104. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA

105. Thorpe incorporates each other allegation.

106. By failing to pay Thorpe and the FLSA Collective members overtime at 1.5 times their regular rates, DHL violated the FLSA. 29 U.S.C. § 207(a).

107. DHL owes Thorpe and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

108. DHL owes Thorpe and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

109. Likewise, DHL owes Thorpe and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

110. DHL knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

111. Because DHL knew, or showed reckless disregard for whether, its pay practices violated the FLSA, DHL owes these wages for at least the past three years.

112. DHL's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

113. Because DHL's decision not to pay overtime was not made in good faith, DHL also owes Thorpe and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

114. Accordingly, Thorpe and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### RELIEF SOUGHT

Thorpe prays for judgment against DHL as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding DHL liable for violations of federal wage laws with respect to Thorpe and all FLSA Collective members covered by this case;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Thorpe and all FLSA Collective members covered by this case;

d. For an equitable accounting and restitution of wages due to Thorpe and all FLSA Collective members members covered by this case;

e. For a judgment awarding attorneys' fees to Thorpe and all FLSA Collective members covered by this case;

f. For a judgment awarding costs of this action to Thorpe and all FLSA Collective members covered by this case;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Thorpe and all FLSA Collective members covered by this case; and

h. For all such other and further relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

*s/J. Corey Asay*
**J. Corey Asay**
Ohio Bar No.: 0090203
**MORGAN & MORGAN, P.A.**
333 W. Vine St., Ste. 1200
Lexington, KY 40507
Tel: (859) 286-8368
Fax: (859) 286-8384
Email: casay@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**